IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

DENISE M. BARNETTE,
Plaintiff,

v.  Civil No. 3:20cv124 (DJN)

WELLS FARGO BANK, N.A.,
Defendant.

**MEMORANDUM OPINION**

Plaintiff Denise M. Barnette ("Plaintiff") originally brought this action in the Circuit Court for the County of Chesterfield against Defendant Wells Fargo Bank, N.A. ("Wells Fargo") and two related defendants, seeking rescission of the foreclosure sale of her home and compensatory and punitive damages. Wells Fargo and the other defendants filed demurrers before the Circuit Court seeking to dismiss Plaintiff's original claims, and the Circuit Court sustained the demurrers as to all claims except Plaintiff's claim for actual fraud against Wells Fargo in Count One of her Second Amended Complaint (ECF No. 1-4). Wells Fargo thereafter removed Plaintiff's claims to this Court. (ECF No. 1.)

This matter now comes before the Court on Wells Fargo's Motion for Judgment on the Pleadings (ECF No. 9), moving pursuant to Federal Rules of Civil Procedure 12(h)(2)(B) and 12(c) to dismiss Plaintiff's actual fraud claim for failure to state a claim.[1] For the reasons set forth below, the Court GRANTS Wells Fargo's Motion (ECF No. 9) and DISMISSES WITHOUT PREJUDICE Count One of the Second Amended Complaint (ECF No. 1-4).

---

[1] In its Motion, Wells Fargo cites only to Rule 12(c) in moving for judgment on the pleadings; however, the substance of Wells Fargo's Motion argues that Plaintiff has failed to state a claim, which invokes Rule 12(h)(2)(B). Accordingly, the Court will resolve Wells Fargo's Motion under both provisions.

## I. BACKGROUND

A motion for judgment on the pleadings filed pursuant to Rules 12(h)(2)(B) and 12(c) uses the same standard as a 12(b)(6) motion. *Moore v. Franklin Credit Mgmt. Corp.*, 2010 WL 1308048, at *1 (E.D. Va. Apr. 2, 2010). Accordingly, in reviewing Wells Fargo's Motion for Judgment on the Pleadings, the Court will accept Plaintiff's well-pleaded factual allegations as true, though the Court need not accept Plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, because Wells Fargo did not file an answer to Plaintiff's allegations in either the state court or this Court, the Court will consider Wells Fargo's most recent demurrer before the state court as its responsive pleading, which admits all facts in Plaintiff's Second Amended Complaint. *See* Va. R. S. Ct. 3:8 (providing that a "demurrer . . . shall . . . be deemed a pleading in response for the count or counts addressed therein"); *Fuste v. Riverside Healthcare Ass'n, Inc.*, 575 S.E.2d 858, 861 (Va. 2003) (noting that "[a] demurrer admits the truth of all properly pleaded material facts" (internal quotations and citations omitted)). Based on these principles, the Court accepts the following facts.

### A. Plaintiff's Mortgage

On December 21, 2001, Louis A. Barnette executed a mortgage loan with First Union Mortgage Corporation ("First Union"). (2d Am. Compl. ("Compl.") (ECF No. 1-4) ¶ 6.) The loan was evidenced by a note (the "Note") and secured by a deed of trust (the "Deed of Trust") on Mr. Barnette's home. (Compl. ¶ 6.) The Deed of Trust provided that "[t]he covenants and agreements" of the Deed "shall bind and benefit the successors and assigns of [First Union] and [Louis Barnette]." (Compl. ¶ 10.) Louis Barnette died intestate on January 1, 2017, survived by Plaintiff, his wife and sole heir, who succeeded to Mr. Barnette's rights and obligations under the Deed of Trust. (Compl. ¶ 11.) During the same period, First Union merged with Wachovia

Bank, which merged with Wells Fargo, rendering Wells Fargo as the assignee of First Union under the Deed of Trust. (Compl. ¶ 12.)

### B. Foreclosure and Alleged Fraud

As First Union's assignee under the Deed of Trust, Wells Fargo acted as both the lender and servicer of Plaintiff's mortgage loan. (Compl. ¶ 13.) At some point, Wells Fargo executed a document appointing ALG Trustee, LLC ("ALG"), as substitute trustee on the Deed of Trust and instructed ALG to foreclose on Plaintiff's mortgage loan. (Compl. ¶¶ 14-15.) ALG then advertised the foreclosure sale of Plaintiff's home in a local newspaper, with the expected auction date of September 19, 2018. (Compl. ¶ 16.)

In response to the potential foreclosure sale of Plaintiff's home, Plaintiff's uncle, Ralph N. Bradley ("Bradley"), applied for a mortgage loan secured by his property to generate funds to pay off Plaintiff's loan. (Compl. ¶ 17.) In August 2018, LoanDepot.com approved Bradley for a mortgage loan with net proceeds in the amount of $76,000, which exceeded the less than $70,000 outstanding balance on Plaintiff's loan with Wells Fargo. (Compl. ¶ 18.) Plaintiff then spoke with a Wells Fargo representative to advise Wells Fargo that Bradley had secured funds to satisfy her mortgage loan balance. (Compl. ¶¶ 20-21.) The Wells Fargo representative advised Plaintiff that Wells Fargo "would" or "should" halt the foreclosure sale of her home if Plaintiff sent to Wells Fargo: (1) a letter of intent to pay off the mortgage loan; (2) documentation reflecting the approval of a loan for Bradley; (3) the amount of such approval; (4) proof of funds to satisfy Plaintiff's mortgage loan; and, (5) a letter from Bradley that he was willing to pay off Plaintiff's loan. (Compl. ¶¶ 22-23.) However, the Wells Fargo representative knew that Wells Fargo would not stop the foreclosure sale unless it received payment in full of Plaintiff's outstanding balance before September 19, 2018. (Compl. ¶ 25.)

On September 12, 2018, Plaintiff and Bradley sent to Wells Fargo: (1) documentary proof of the approval of Bradley's loan for more than the amount needed to pay off the loan; (2) a letter from Bradley that he would use the loan funds to pay off the Barnette loan; and, (3) a letter of intent to pay off the loan. (Compl. ¶ 26.) Plaintiff believed that her compliance with the Wells Fargo representative's instructions would stop the foreclosure sale of her home on September 19, 2018. (Compl. ¶ 27.) Plaintiff alleges that had she not believed the Wells Fargo representative's instructions, she would have retained legal counsel to stop the foreclosure sale or, if necessary, filed for chapter 13 bankruptcy. (Compl. ¶ 28.) Instead, despite Wells Fargo receiving the documents that Plaintiff had sent, Wells Fargo permitted ALG to proceed with the September 19, 2018 auction of Plaintiff's home. (Compl. ¶ 30.)

During the auction of her home, TDZ Properties, LLC ("TDZ") offered the highest bid and ALG agreed to sell Plaintiff's home to TDZ. (Compl. ¶ 32.) As part of the sale, ALG and TDZ executed a Memorandum of Sale that included a provision that voided the sale if Plaintiff and Wells Fargo entered an agreement to stop the foreclosure. (Compl. ¶ 34.) On October 1, 2018, before the sale of her home to TDZ was finalized, Plaintiff filed a *lis pendens* complaint in state court challenging the validity of the foreclosure.[2] (Compl. ¶ 42.) ALG notified TDZ about Plaintiff's complaint, but TDZ insisted on closing on the sale of Plaintiff's home. (Compl. ¶¶ 44-45.) On October 3, 2018, ALG executed a trustee's deed, confirming the sale of Plaintiff's home to TDZ. (Compl. ¶¶ 48-50.)

---

[2] A *lis pendens* action provides notice in the chain of title to real property that the property is the subject matter of pending litigation and that "any interests acquired during the pendency of the suit are subject to its outcome." *Lis Pendens*, Black's Law Dictionary (11th ed., 2019); *see* Va. Code § 8.01-268 (establishing the procedures for *lis pendens* actions in Virginia).

4

### C. Plaintiff's Complaint

After filing her initial *lis pendens* complaint on October 1, 2018, and successive rounds of demurrers by Wells Fargo, ALG and TDZ, Plaintiff filed her second and final Amended Complaint on October 16, 2019. *Barnette v. Wells Fargo Bank, N.A.*, Case No. CL 18-003039-00 (Va. Cir. Ct., Chesterfield Cnty. Oct. 1, 2018). Based on the above allegations, Plaintiff raised two counts for relief. In Count One, Plaintiff alleged that Wells Fargo committed actual fraud by representing to Plaintiff, through its agent, that she needed only to submit the paperwork identified by the agent to stop the foreclosure sale of her home, while knowing that Plaintiff in fact needed to completely satisfy her outstanding balance on the loan. (Compl. ¶¶ 13-65.) And, in Count Two, Plaintiff alleged that ALG breached its fiduciary duty to Plaintiff not to proceed with the foreclosure sale of her home after receiving notice of her "bona fide challenge to the validity of the foreclosure." (Compl. ¶ 68.)

Based on the above counts, Plaintiff sought an order rescinding the foreclosure sale of her home and both compensatory and punitive damages. (Compl. at 13.) Ultimately, the state court dismissed with prejudice all claims except Plaintiff's actual fraud claim against Wells Fargo for compensatory damages. (Not. of Removal (ECF No. 1) ¶¶ 12-13.) Wells Fargo thereafter removed Plaintiff's claims to this Court based on diversity jurisdiction. (Not. of Removal ¶¶ 19-27.)

### D. Wells Fargo's Motion for Judgment on the Pleadings

On May 28, 2020, Wells Fargo filed its Motion for Judgment on the Pleadings (ECF No. 9), arguing that Plaintiff fails to state claim for actual fraud. In support of its Motion, Wells Fargo argues that Plaintiff fails to allege sufficient reliance on the alleged misrepresentations by its agent. (Wells Fargo Bank's Mem. in Supp. of Mot. for J. on the Pleadings ("WF Mem.")

5

(ECF No. 10) at 6-7.) Specifically, Wells Fargo cites to Exhibit D of Plaintiff's Second Amended Complaint, which shows that Bradley had obtained only a quote to refinance the existing mortgage on his property. (WF Mem. at 6.) Because a refinanced mortgage loan by its nature requires that some of the loaned funds be used to pay off the original loan, and because the documents provided by Bradley failed to show how much of his original loan would need to be satisfied, Wells Fargo maintains that Plaintiff failed to demonstrate that she could pay off the remaining balance on her mortgage loan, which the Wells Fargo representative told Plaintiff she must do before Wells Fargo would postpone the foreclosure sale. (WF Mem. at 6-7.) Therefore, Wells Fargo contends that Plaintiff has not alleged sufficient reliance on Wells Fargo's alleged misrepresentations, as required to state a fraud claim under Virginia law. (WF Mem. at 7.)

Even assuming Plaintiff has alleged sufficient reliance, Wells Fargo argues that Plaintiff's reliance proved unreasonable, because oral promises concerning the sale of real property are unenforceable under Virginia law. (WF Mem. at 7.) Wells Fargo contends that Plaintiff should have known this rule and therefore could not reasonably rely on the oral representations of Wells Fargo's agent. (WF Mem. at 7-8.) Wells Fargo avers that Plaintiff likewise fails to allege any benefit obtained by Wells Fargo from its alleged misrepresentations, because complete satisfaction of the mortgage loan by Plaintiff would have allowed Wells Fargo to avoid the costs associated with foreclosure. (WF Mem. at 8-9.) And because Wells Fargo had an interest in avoiding the costs associated with foreclosure, Wells Fargo maintains that it lacked the requisite intent to mislead Plaintiff. (WF Mem. at 9-11.)

Plaintiff filed her Memorandum in Opposition to Wells Fargo's Motion on June 11, 2020, (Mem. in Opp. to Mot. for J. on the Pleadings ("Pl.'s Resp.") (ECF No. 11)), and Wells Fargo

filed its Reply on June 17, 2020, (Wells Fargo Bank's Reply Br. in Supp. of Its Mot. for J. on the Pleadings (ECF No. 12)), rendering Wells Fargo's Motion now ripe for review.

## II. STANDARD OF REVIEW

As mentioned, a motion for judgment on the pleadings under Rules 12(h)(2)(B) and 12(c) applies the same standard as a 12(b)(6) motion. *Moore*, 2010 WL 1308048, at *1. Therefore, a motion for judgment on the pleadings tests the sufficiency of a complaint or counterclaim; it does not serve as the means by which a court will resolve contests surrounding the facts, determine the merits of a claim or address potential defenses. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a motion for judgment on the pleadings, the Court will accept a plaintiff's well-pleaded allegations as true and view the facts in a light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.2d 1130, 1134 (4th Cir. 1993). However, "the tenet that a court must accept as true all of the allegations contained in a [counterclaim] is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

Under the Federal Rules of Civil Procedure, a complaint or counterclaim must state facts sufficient to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). As the Supreme Court opined in *Twombly*, a complaint or counterclaim must state "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action," though the law does not require "detailed factual allegations." *Id.* (citations omitted). Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," rendering the right "plausible on its face" rather than merely "conceivable." *Id.* at 555, 570. Thus, a counterclaim must assert facts that are more than "merely consistent with" the other party's liability. *Id.* at 557. And the facts alleged must be sufficient to "state all

the elements of [any] claim[s]." *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

### III. ANALYSIS

Because Wells Fargo relies on the Court's diversity jurisdiction to resolve Plaintiff's actual fraud claim, the Court must apply the substantive law of the state in which its sits, including its choice-of-law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). To that end, it is well established that "it is the place of the wrong (*lex loci delicti*) that determines which State's substantive law applies in a tort action brought in Virginia." *Quillen v. Int'l Playtex, Inc.*, 789 F.2d 1041, 1044 (4th Cir. 1986) (italics supplied) (citing *McMillan v. McMillan*, 253 S.E.2d 662, 663 (Va. 1979)). In the fraud context, "the place of the wrong is where the loss is sustained . . . ." *Jordan v. Shaw Indus., Inc.*, 1997 WL 734029, at *3 (4th Cir. Nov. 26, 1997) (citations omitted). Here, no party disputes that Plaintiff sustained her alleged loss in Virginia, where the foreclosure sale occurred. Therefore, Virginia law governs Plaintiff's claim for actual fraud against Wells Fargo.

In Virginia, "[a] plaintiff asserting a cause of action for actual fraud bears the burden of proving by clear and convincing evidence the following elements: '(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting in damage to the party misled.'" *Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.*, 507 S.E.2d 344, 346 (Va. 1998) (quoting *Evaluation Research Corp. v. Alequin*, 439 S.E.2d 387, 390 (Va. 1994)). Federal Rule of Civil Procedure 9(b) requires a party claiming fraud or mistake to "state with particularity the circumstances constituting fraud or mistake," though "[m]alice, intent, knowledge, and other conditions of a person's mind may

be alleged generally." Although Rule 9(b) permits a plaintiff to plead the conditions of a person's mind generally, a plaintiff may not "evade the less rigid — though still operative — strictures of Rule 8." *Iqbal*, 556 U.S. at 686-87.

Ultimately, Rule 9(b) requires plaintiffs to plead with particularity "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (citations omitted). A plaintiff must also plead "reasonable, detrimental reliance . . . with particularity." *Xia Bi v. McAuliffe*, 927 F.3d 177, 184 (4th Cir. 2019) (citations omitted) (explaining that the rationale behind Rule 9(b)'s heightened pleading standard "applies with special force to allegations of reliance, which inherently rest on information within a plaintiff's possession"). Rule 9(b) seeks "to provide defendants with fair notice of claims against them and the factual ground upon which they are based . . . ." *McCauley v. Home Loan Inv. Bank, F.S.B.*, 710 F.3d 551, 559 (4th Cir. 2013). Thus, "lack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6)," which in turn provides grounds for judgment on the pleadings under Rules 12(c) and 12(h)(2)(B). *Harrison*, 176 F.3d at 783 n.5.

Here, Wells Fargo contends that Plaintiff's actual fraud claim must fail, because her allegations demonstrate that she failed to comply with Wells Fargo's alleged representation that, to halt the foreclosure sale, Plaintiff provide proof that the funds from Bradley's refinanced mortgage could satisfy the outstanding balance on her mortgage loan. (WF Mem. at 6-7.) Indeed, Plaintiff alleges, and the Court accepts as true, that Plaintiff spoke with a Wells Fargo representative who advised, in relevant part, that if Plaintiff timely provided "proof of funds to pay off [her mortgage] loan," Wells Fargo either "would" or "should" halt the scheduled

9

foreclosure sale. (Compl. ¶¶ 18-23.) On September 12, 2018, Plaintiff and Bradley sent "documentary proof that Bradley's loan for more than the amount needed to pay off [Plaintiff's] loan had been approved," along with a letter from Bradley that he intended to use the funds from his refinanced mortgage loan to satisfy Plaintiff's outstanding balance with Wells Fargo. (Compl. ¶ 26.) Plaintiff attached one of these documents — a "Loan Estimate" provided to Bradley by LoanDepot.com — as Exhibit D to her Complaint.[3] (Compl. ¶ 26; Ex. D to 2d Am. Compl. ("Loan Estimate") (ECF No. 1-4) at 30-32.) However, the Loan Estimate merely provided a quote for an $80,000, thirty-year, fixed-rate refinanced mortgage loan. (Loan Estimate at 1.) Importantly, the Loan Estimate stated that "[b]y signing, [Bradley was] only confirming that [he] ha[d] received th[e Estimate]" and that Bradley's signature did not constitute an acceptance of the loan. (Loan Estimate at 3.) Plaintiff does not specifically allege that she sent proof of the necessary funds, nor do the documents that she allegedly provided give rise to the inference that she produced proof of the necessary funds.

Based on these allegations and the Loan Estimate attached to Plaintiff's Complaint, the Court finds that Plaintiff fails to allege with sufficient particularity that she complied with Wells Fargo's representation that if Plaintiff provided proof of the funds needed to satisfy her loan, Wells Fargo would halt the foreclosure sale. Indeed, by its terms, the Loan Estimate demonstrated only that Bradley had received a quote for an $80,000 refinanced mortgage loan. This quote provided proof neither of Bradley's acceptance of the loan nor that Bradley would receive enough funds following acceptance to satisfy Plaintiff's outstanding balance with Wells

---

[3] The Court may consider the Loan Estimate in resolving Wells Fargo's Motion for Judgment on the Pleadings, because Plaintiff attached the Estimate to her Second Amended Complaint (ECF No. 1-4). *See Demetry v. Lasko Prods., Inc.*, 284 F. App'x 14, 15 (4th Cir. 2008) (affirming that district courts may rely on documents attached as exhibits to a pleading in resolving a motion for judgment on the pleadings (citing Fed. R. Civ. P. 10(c))).

10

Fargo. And although Plaintiff alleges that she and Bradley sent other documents to Wells Fargo, Plaintiff fails to allege what those documents contained with sufficient particularity, as required by Rule 9(b). Plaintiff's failure to allege particularized facts regarding her compliance with Wells Fargo's instructions proves especially problematic, because the contents of the documents that Plaintiff provided to Wells Fargo "inherently rest[s] on information within [Plaintiff's] possession." *Xia Bi*, 927 F.3d at 184.

The question then becomes whether Plaintiff's failure to allege full compliance with Wells Fargo's representations defeats her actual fraud claim. As mentioned, Wells Fargo contends that Plaintiff's failure to allege full compliance proves fatal to the reliance prong of her fraud claim. (WF Mem. at 6-7.) Plaintiff responds that it does not matter that she failed to fully comply, because she in fact relied on Wells Fargo's representations in deciding not to stop the foreclosure sale by other means. (Pl.'s Resp. at 3.) However, putting aside whether Plaintiff has sufficiently alleged reliance, her actual fraud claim must fail, because her failure to allege compliance with Wells Fargo's representations renders the falsity of Wells Fargo's representations merely speculative.

Plaintiff bases her claim of a false representation on Wells Fargo's alleged promise to stop the foreclosure sale in the future, but "fraud cannot ordinarily be predicated on unfulfilled promises or statements of future events." *Flip Mortg. Corp. v. McElhone*, 841 F.2d 531, 537 (4th Cir. 1988). Broken promises sound in contract law, so courts only allow this type of fraud claim if the defendant never intended to perform, and a plaintiff must show that: "(1) the defendant made a promise knowing it was false, (2) with the intent to induce the promisee to perform, and (3) the promisee acts on the promise to his detriment." *T.G. Slater & Son, Inc. v.*

*Donald P. and Patricia Brennan LLC*, 385 F.3d 836, 844 (4th Cir. 2004) (explaining elements of misrepresentation of intent to perform fraud claim in Virginia).

Here, because Plaintiff fails to allege full compliance with Wells Fargo's representations, the Court cannot reasonably infer that Wells Fargo in fact intended to proceed with the foreclosure sale if Plaintiff had complied with its request. Plaintiff has not alleged with sufficient particularity facts to support a claim that Wells Fargo misrepresented an intent to perform. Instead, she asserts only a conclusory allegation that the Wells Fargo representative knew that Wells Fargo would only stop the foreclosure if it received payment in full of Plaintiff's outstanding balance. She does not plead any facts to support this allegation or that, at the time Wells Fargo represented that it would stop the foreclosure sale if Plaintiff provided proof of funds, Wells Fargo did not intend to keep that promise. Plaintiff must plead the falsity of Wells Fargo's statement with particularity. Plaintiff's allegations, taken as true, fail to meet this burden. And the falsity of Wells Fargo's representations proves even more speculative considering that Wells Fargo had a logical interest in receiving full satisfaction of the outstanding balance on Plaintiff's loan to avoid the costs associated with foreclosure.

Neither do the cases cited by Plaintiff rescue her claim. Plaintiff argues that her actual fraud claim against Wells Fargo resembles the fraud claims in *Bennett v. Bank of America, N.A.*, 2012 WL 1354546 (E.D. Va. Apr. 18, 2012), and *Matanic v. Wells Fargo Bank, N.A.*, 2012 WL 4321634, (E.D. Va. Sept. 19, 2012), which Senior United States District Judge Henry E. Hudson sustained at the motion to dismiss stage based on similar allegations. (Pl.'s Resp. at 3.) However, in *Bennett*, the defendant "assured [the plaintiff that] his short sale had been approved and that [the defendant] would cancel the foreclosure sale," which constituted a false representation on which the plaintiff relied in deciding not to block the foreclosure sale by other

means. 2012 WL 1354546, at *2, 9. Therefore, unlike here, the plaintiff in *Bennett* complied with the defendant's instructions on how to halt the foreclosure sale, and the defendant even confirmed the plaintiff's compliance. Likewise, in *Matanic*, no party disputed that the plaintiff had complied with the defendant's representation that the plaintiff produce certain tax return documents to prevent the disputed foreclosure sale. 2012 WL 4321634, at *6.

Ultimately, Plaintiff fails to show with particularity that she complied with Wells Fargo's representations as to how she could halt the foreclosure sale. Whether Plaintiff's failure was by mistake or otherwise carries no consequence, for without her compliance, the Court cannot reasonably infer that Wells Fargo falsely represented that Plaintiff would avoid foreclosure if she followed its instructions. It may also be true that Wells Fargo's agent told Plaintiff that she need only produce the Loan Estimate as proof of the necessary funds, but Plaintiff's allegations do not allege as such with sufficient particularity. Accordingly, the Court will dismiss Plaintiff's actual fraud claim in Count One of the Second Amended Complaint.[4]

---

[4] In her Response, Plaintiff suggests that because the state court overruled Wells Fargo's demurrer as to her actual fraud claim, the Court should defer to that ruling. (Pl.'s Resp. at 1.) Indeed, "[w]hen a case is removed from state court to federal court, the law of the case doctrine preserves any prior rulings by the state court in that case." *Dow v. Jones*, 311 F. Supp. 2d 461, 465 (D. Md. 2004). However, a prior state court interlocutory ruling, such as the state court's demurrer ruling here, "while to be treated with respect, is neither final nor conclusive" and, therefore, may be reconsidered upon removal to a federal court. *Thornton v. Cessna Aircraft Co.*, 703 F. Supp. 1228, 1231 (D.S.C. 1988).

## IV. CONCLUSION

For the reasons set forth above, the Court GRANTS Wells Fargo's Motion (ECF No. 9) and DISMISSES WITHOUT PREJUDICE Count One of the Second Amended Complaint (ECF No. 1-4).[5]

An appropriate order will issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

/s/
David J. Novak
United States District Judge

Richmond, Virginia
Date: June 25, 2020

---

[5] The Court dismisses Plaintiff's claims instead of granting judgment to Wells Fargo, because Wells Fargo's Motion asserts that Plaintiff fails to state a claim, not that it is entitled to judgment as a matter of law. Because Plaintiff could allege particularized facts showing that she complied with Wells Fargo's representations, the Court will dismiss her actual fraud claim without prejudice.

14